[Cite as *In re A.T.*, 2018-Ohio-5295.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |  |
|---|---|---|---|
| IN THE MATTER OF: | : | | |
| A.T., et al. | : | CASE NOS. | CA2018-06-115 |
| | | | CA2018-06-116 |
| | : | | |
| | | O P I N I O N | |
| | : | 12/28/2018 | |
| | : | | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JS2012-1123

Elizabeth L. Ford, P.O. Box 42601, Cincinnati, OH  45242, for appellee

Charles E. McFarland, 338 Jackson Road, New Castle, KY  40050, for appellant

**S. POWELL, P.J.**

{¶ 1}   Appellant, the biological mother of A.T. and D.T. ("Mother"), appeals from the decision of the Butler County Court of Common Pleas, Juvenile Division, declining the transfer from the Hamilton County Court of Common Pleas, Juvenile Division, of a motion for legal custody filed by appellee, A.T. and D.T.'s biological father ("Father").   For the reasons outlined below, we reverse and remand for further proceedings.

**The Parties**

{¶ 2}   Mother and Father are the biological parents of A.T. and D.T.  At the time of D.T.'s birth, Father was a minor.  Mother and Father were never married.  Mother currently

resides in Butler County whereas Father is believed to reside with A.T. and D.T. in Hamilton County.

### Facts and Procedural History

{¶ 3} On March 19, 2010, Mother gave birth to D.T. Several months later, on August 9, 2010, the Butler County Child Support Enforcement Agency ("BCCSEA") established an administrative order that required Father to pay child support for D.T. in the amount of $51 per month. The Child Support Computation Worksheet attached to the administrative order filed by BCCSEA listed Mother as residential parent and legal custodian of D.T. The record indicates this administrative order was filed by BCCSEA under Case No. JS2011-0924.

{¶ 4} Over a year later, on December 7, 2011, BCCSEA moved the Butler County Juvenile Court to adopt the administrative order regarding Father's child support obligation. A magistrate subsequently adopted the administrative order on January 19, 2012. The juvenile court affirmed and adopted the magistrate's decision later that same day. Neither Mother nor Father appealed from the juvenile court's decision.

{¶ 5} On October 4, 2011, D.T.'s paternal-grandmother ("Paternal-Grandmother") filed a complaint with the Butler County Juvenile Court on Father's behalf requesting he be granted visitation time with D.T. Paternal-Grandmother also filed on Father's behalf a child custody affidavit and an application for child support. It is undisputed that Paternal-Grandmother filed the complaint, application, and affidavit because Father was a minor.

{¶ 6} On December 8, 2011, despite him still being a minor, Father filed with the Butler County Juvenile Court a motion for legal custody of D.T. In support of this motion, Father alleged that it was in D.T.'s best interest for him to be granted legal custody. This was because, according to Father, Mother lived in a cramped two-bedroom apartment with four other adults and two children. Father also alleged the apartment that Mother lived in

had "unsanitary living conditions with bedbugs and trash" and that D.T.'s maternal-grandmother "resides there and has previously been evicted for bedbugs and hording problem[.]"

{¶ 7} On December 22, 2011, a hearing on Paternal-Grandmother's complaint was held before a Butler County Juvenile Court magistrate. This hearing also addressed Father's motion for legal custody. Following this hearing, the magistrate determined that it was in D.T.'s best interest to award Father visitation time in accordance with its standard visitation time schedule. The magistrate, however, dismissed Father's motion for legal custody since "[t]he motion for legal custody was not properly filed because [Father] is a minor." The juvenile court affirmed and adopted the magistrate's decision the following day. Neither Mother nor Father appealed from the juvenile court's decision.

{¶ 8} On February 9, 2012, Mother gave birth to A.T. Several months later, on October 17, 2012, BCCSEA established an updated administrative order that required Father to pay $377.82 in monthly child support for both A.T. and D.T. Although this order was originally filed under Case No. JS2012-1123 for matters regarding D.T., the record indicates BCCSEA filed this same order in the newly created Case No. JS2011-0924 for matters regarding A.T. As part of these filings, the record indicates BCCSEA requested the juvenile court to consolidate both child support orders "into a single case/order, calculate, and establish a single order of support[.]"

{¶ 9} On November 2, 2012, a Butler County Juvenile Court magistrate adopted the updated administrative order filed by BCCSEA in both Case Nos. JS2012-1123 and JS2011-0924. Similar to the administrative order regarding D.T., the Child Support Computation Worksheet attached to this updated administrative order also listed Mother as residential parent and legal custodian of A.T. The juvenile court affirmed and adopted the

magistrate's decision three days later.[1]   Neither Mother nor Father appealed from the juvenile court's decision.

{¶ 10} On March 21, 2013, BCCSEA filed a motion to show cause with the Butler County Juvenile Court alleging Father had failed to pay his monthly child support obligation, thereby resulting in arrearages amounting to  $3,742.16.  Approximately five months later, a magistrate found Father in contempt for failing to pay his monthly child support obligation. The juvenile court affirmed and adopted the magistrate's decision later that same day. Neither Mother nor Father appealed from the juvenile court's decision.

{¶ 11} On February 5, 2014, a contempt review hearing was held before a Butler County Juvenile Court magistrate.  Following this hearing, the magistrate found Father had paid only a portion of his child support obligation.  Two months later, another contempt review hearing was held before the magistrate, wherein the magistrate again found Father had paid only a portion of his child support obligation.  However, after yet another contempt review hearing held before the magistrate, the magistrate found Father had not made any additional payments towards his child support obligation.  The magistrate therefore ordered Father to participate and complete all the requirements of Ohio Means Jobs program, comply with all directives made by his Ohio Means Jobs case manager, and participate in services offered through Community Behavior Health, if directed to do so by his case manager.

{¶ 12} On July 21, 2014, another contempt review hearing was held before a Butler County Juvenile Court magistrate.  The record indicates Father failed to appear at this hearing and a bench warrant was issued for his arrest.  Approximately one month later,

---

1. The record indicates that all subsequent filings submitted to the Butler County Juvenile Court were filed under Case No. JS2012-1123 regarding A.T., Case No. JS2011-0924 regarding D.T., or both Case Nos. JS2012-1123 and JS2011-0924 regarding both children.

BCCSEA filed a motion requesting the juvenile court recall and dismiss the bench warrant since Father "personally appeared at the BCCSEA and submitted to the required genetic testing and, further, said Party will personally appear before the court at the designated date and time for hearing on this motion." The magistrate granted BCCSEA's motion to recall the bench warrant two days later. The record does not contain any information regarding the results of the genetic testing. Father, however, never objected to him being classified as A.T. and D.T.'s biological father.

{¶ 13} On October 14, 2014, BCCSEA filed a motion with the Butler County Juvenile Court requesting the juvenile court order any monies Father received from a personal injury settlement be collected and sent to BCCSEA to pay down Father's child support arrearages. The juvenile court granted BCCSEA's motion two days later. Father did not appeal from the juvenile court's decision.

{¶ 14} On January 8, 2015, another contempt review hearing was held before a Butler County Juvenile Court magistrate. Following this hearing, the magistrate found Father had paid only a small portion of his child support obligation since the last review hearing. But, after another contempt review hearing, the magistrate found Father had again not made any payments towards his child support obligation. The magistrate therefore ordered Father to submit financial documents from his current and former employers as well as the settlement statement from a previously resolved personal injury claim. Shortly thereafter, following two additional contempt review hearings, the magistrate found Father had still not made any payments towards his child support obligation

{¶ 15} The record indicates Father paid an additional sum towards his child support obligation as of the contempt review hearing held on September 2, 2016 with another smaller portion of his child support obligation as of the contempt review hearing held on December 9, 2016. Father, however, did not make any additional payments towards his

child support obligation as of the contempt review hearings held on March 3, 2017 and May 5, 2017. Because Father had not paid his child support obligation as ordered by the juvenile court, BCCSEA reported Father's arrearages had increased to $13,411.74. The juvenile court thereafter granted another motion filed by BCCSEA requesting Father send any monies he received from his previously resolved personal injury settlement to BCCSEA to pay down his child support arrearages. Father did not appeal from the juvenile court's decision.

{¶ 16} On July 26, 2017, rather than moving the Butler County Juvenile Court for relief, Father filed a petition with the Hamilton County Court of Common Pleas, Domestic Relations Division, requesting he be granted a domestic violence civil protection order ("DVCPO") against Mother on A.T. and D.T.'s behalf. In support of his petition, Father alleged the children were being subject to severe discipline by Mother and Mother's boyfriend that included "hitting both children leaving serious bruising." Father also alleged that Mother's boyfriend had put socks down A.T. and D.T.'s throats as punishment while in Mother's care. The Hamilton County Domestic Relations Court granted Father an emergency ex parte DVCPO later that same day.

{¶ 17} On August 3, 2017, Father filed a motion for a continuance with the Butler County Juvenile Court arguing that any upcoming proceedings should be stayed since there was "another court case for full hearing of PTO case in Hamilton County Ohio regarding the children and their mother." Although it had previously issued orders regarding both Mother and Father, as well as A.T. and D.T. in both Case Nos. JS2012-1123 and JS2011-0924, thereby establishing it as the appropriate forum for any action regarding the children, the juvenile court nevertheless granted Father's motion for a continuance.

{¶ 18} On August 23, 2017, a hearing was held before a Hamilton County Domestic Relations Court magistrate on Father's petition for a DVCPO. During this hearing, the

magistrate heard testimony from Father, Paternal-Grandmother, A.T.'s therapist, and Mother's boyfriend, among others. Following this hearing, the magistrate granted Father's petition for a DVCPO. In support, the magistrate stated:

> The parties are the parents of two children. [A.T.] has been diagnosed with a mental health disorder called "Conduct Disorder." He has aggressive and destructive behavior directed towards people, animals, and property. He is prescribed medication and therapy. His therapist further testified that physical discipline is not appropriate for [A.T.]. The allegations of [Father] include seeing bruising on both of the children and on one child a black eye upon return from parenting time. Mother admits to the physical disciplining of the children by her boyfriend. He engages in "shaming" as a form of punishment, and placed a sock in the mouth of one child, also as a form of punishment. In the therapist's opinion, none of these tactics are isolated incidents, and none are helpful to the children or appropriate. In fact they are harmful. The therapist further opined that Mother does not have the ability to prevent harm to the children. Father wants the children to interact with their Mother, but under certain conditions. Father's fear of the discipline and injuries mental and physical to the children are well-founded.

{¶ 19} On October 4, 2017, Mother filed objections to the magistrate's decision. Mother based her objections, in part, on her claim that the testimony provided in support of Father's petition lacked credibility. After taking the matter under advisement, the domestic relations court sustained Mother's objections and rejected the DVCPO previously issued by the magistrate. In so holding, the domestic relations court stated, in pertinent part, the following:

> This Court agrees with and sustains [Mother's] objection to the credibility of the evidence supporting the CPO. Testimony received by the Magistrate established that the parties and their families have a tumultuous relationship. The Court is troubled by testimony about the way the children have acted and the type of punishment administered by [Mother's] boyfriend.

Continuing, the domestic relations court stated:

> While [A.T.'s therapist's] testimony reveals her concern for [A.T.'s] emotional health and her disapproval for the disciplinary

- 7 -

techniques employed by [Mother's] boyfriend, concerns shared by this Court, she does not believe that [Mother] threatens [A.T.'s] safety. [A.T.'s therapist's] perspective, that of a professional social worker and observer, fatally undermines [Father's] argument; no other evidence offered by [Father] suggests that [Mother] must be kept from her children for their safety.

Concluding, the domestic relations court stated:

[Mother] must protect her children. This Court warns her to use reasonable techniques for disciplining her children. Further, when the children are in her care, *she* should be the *only* person who disciplines them. Without regard to other relationships, she must act for her children's welfare and in their best interest.

(Emphasis sic.)

{¶ 20} On January 4, 2018, rather than seeking relief in the Butler County Juvenile Court, Father filed a petition with the Hamilton County Court of Common Pleas, Juvenile Division, seeking legal custody of both A.T. and D.T. Since the children were then in his care, and had been in his care since July of 2017, Father also requested the juvenile court grant him temporary emergency custody of the children.[2] In support of his petition, Father alleged the following:

Mother has engaged in abusive treatment of the boys and is not capable of providing a safe, stable, secure environment for them. It is in their best interest to be placed in my care [and] in my custody.

Father also filed a supporting affidavit wherein he alleged Mother's boyfriend had put socks and/or napkins down A.T. and D.T.'s throats as punishment. Father further alleged that Mother had "forced the children to stand outdoors naked as a means of punishment[.]"

{¶ 21} After holding a hearing on the matter, a Hamilton County Juvenile Court

---

2. According to Mother, except for on two birthdays and for two hours on Mother's Day, she has neither seen nor visited with A.T. or D.T. since July of 2017 after Father refused to return the children to her care. This is true despite the fact that Mother had been designated by the Butler County Juvenile Court as the children's residential parent and legal custodian.

magistrate granted Father's petition and awarded him temporary emergency custody of both A.T. and D.T. In reaching this decision, the magistrate stated:

> Based on the sworn affidavit by [Father], and the letter from [A.T.'s therapist], and the testimony in court today, the children are at risk of harm if returned to [Mother's] care and control. They are experiencing inappropriate physical/corporal punishment from [Mother's] boyfriend. Further, [A.T.] is experiencing distressing behavior after visits with [Mother]. He has now been diagnosed with PTSD. Until the next court date, legal custody of the children is granted to [Father.]

The magistrate also granted a motion to transfer the case to the Butler County Juvenile Court. Specifically, as the magistrate stated:

> Butler County Juvenile Court has previously issued a parenting order regarding [Father]. Further, that Court has issued a support order for both children. Mother remains a resident of Butler County. Father is a resident of Hamilton County, and the children have lived with [F]ather pursuant to court orders since July of 2017. Butler County is a more convenient forum. Father's custody petition is transferred to Butler County Juvenile Court.
>
> Until the Butler County Juvenile Court hears this matter, interim order of legal custody of the children is granted to [Father]. [Mother] is granted two 4-hour periods of supervised visitation per week. The supervisor shall be agreed to by the parties.

The record before this court does not contain any evidence indicating the Hamilton County Juvenile Court ever affirmed and adopted the magistrate's decision.

{¶ 22} On January 5, 2018, a contempt review hearing was held before a Butler County Juvenile Court magistrate. Following this hearing, the magistrate found Father had paid a small portion towards his child support obligation and arrearages since the last review hearing. Apparently notified that the Hamilton County Juvenile Court ordered the transfer of Father's motion for legal custody, the magistrate also found Father had provided documentation from the Hamilton County Juvenile Court indicating he had been awarded temporary custody of D.T. The magistrate's order did not make any reference to A.T.

**{¶ 23}** A subsequent contempt review hearing held before a Butler County Juvenile Court magistrate indicated Father had paid an additional small portion towards his child support obligation since the last review hearing. The record before this court does not contain any documentation indicating the juvenile court affirmed and adopted this decision, nor does the record indicate the juvenile court affirmed and adopted the magistrate's decision finding Father had paid $100 towards his child support obligation following yet another contempt review hearing. Despite this, there appears to be no dispute that Father was in arrears on his child support obligations regarding both A.T. and D.T.

**{¶ 24}** Upon receiving the transfer from the Hamilton County Juvenile Court, the Butler County Juvenile Court scheduled the matter for a hearing. However, prior to holding this hearing, the juvenile court issued a decision summarily denying Father's motion for custody of A.T. and D.T.[3] The juvenile court thereafter noted, without providing any rationale for its decision, that it was declining to accept the transfer of Father's motion for legal custody from the Hamilton County Juvenile Court. Specifically, as the juvenile court stated, Father's petition seeking legal custody "is to be returned to Hamilton County Juvenile Court."

**{¶ 25}** Mother filed timely notices of appeal from both Case No. JS2012-1123 regarding A.T. and Case No. JS2011-0924 regarding D.T. In addition to the notice of appeal, Mother also moved the Butler County Juvenile Court to issue an order clarifying its earlier decision declining to accept the transfer of Father's motion from the Hamilton County Juvenile Court. The juvenile court issued an order in response to Mother's motion for clarification three days later. As part of this order the juvenile court stated, in pertinent part,

---

3. It should be noted, except for his motion for legal custody of D.T. that the Butler County Juvenile Court dismissed on December 23, 2011, Father did not file any motion with the Butler County Juvenile Court seeking legal custody of either A.T. or D.T. This is true despite the fact that Father told the Hamilton County Domestic Relations Court that he intended to file such a motion during the hearing on Father's petition for a DVCPO before the Hamilton County Domestic Relations Court.

the following:

> On 5-18-18, the mother of this child [D.T.] filed a Motion for Clarification of the order issued by this court on 4-23-18. That order was issued in response to what this court viewed as a request by the Hamilton County Juvenile Court to accept venue concerning a matter that had been commenced in that court in January of this year. The order of 4-23 was issued only to indicate that this court was declining to accept the matter in this court. This court has returned the records regarding this matter to the Hamilton County Juvenile Court. This court has also discussed this matter with Hamilton County Juvenile Court and it is this court's understanding that the Hamilton County Juvenile Court will be proceeding in this matter.

The matter was thereafter submitted to this court, wherein Mother raised two assignments of error for review.

**Father Did Not File an Appellee Brief**

{¶ 26} Father did not file a brief in this case. Pursuant to App.R. 18(C), when an appellee fails to file a brief, "in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." Father, however, did file a notice with this court indicating he did "not intend to file a Brief in the captioned action insofar as the resolution of the proper venue/forum for this action is immaterial to the disposition of the underlying substantive issues in this case." This court will therefore accept Mother's statement of facts as alleged.

**Appeal**

{¶ 27} Assignment of Error No. 1:

{¶ 28} THE BUTLER COUNTY JUVENILE COURT ERRED IN REFUSING TO ACCEPT THE TRANSFER OF A PETITION FOR CUSTODY FROM THE HAMILTON COUNTY JUVENILE COURT REGARDING A.T. AND D.T.

{¶ 29} In her first assignment of error, Mother argues the Butler County Juvenile

Court erred by declining the transfer of Father's motion for legal custody of A.T. and D.T. from the Hamilton County Juvenile Court.

**Standard of Review**

{¶ 30} R.C. 2151.271 allows a juvenile court in one county to transfer a case to a juvenile court of another county. Pursuant to that statute:

> [I]f the child resides in a county of the state and the proceeding is commenced in a juvenile court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence on the filing of the complaint or after the adjudicatory, or dispositional hearing, for such further proceeding as required. * * *

The juvenile court, however, must transfer a proceeding "if other proceedings involving the child are pending in the juvenile court of the county of the child's residence." R.C. 2151.271.

{¶ 31} Similarly, Juv.R. 11(A) allows a juvenile court to transfer a case to a juvenile court of another county. Pursuant to that rule:

> If the child resides in a county of this state and the proceeding is commenced in a court of another county, that court, on its own motion or a motion of a party, may transfer the proceeding to the county of the child's residence upon the filing of the complaint or after the adjudicatory or dispositional hearing for such further proceeding as required.

{¶ 32} But, just as with R.C. 2151.271, in accordance with Juv.R. 11(B), "[t]he proceedings, other than a removal action, shall be so transferred if other proceedings involving the child are pending in the juvenile court of the county of the child's residence." A child has the same residence as his parents, legal guardian of his person, or custodian who stands in the relation of loco parentis. *In re Carpenter*, 4th Dist. Washington No. 01CA26, 2002 Ohio App. LEXIS 495, *15 (Jan. 31, 2002), citing R.C. 2151.06.

{¶ 33} Under R.C. 2151.271 and Juv.R. 11(A), a juvenile court retains discretion to transfer a case to a juvenile court of another county when other proceedings involving the child are not pending in another county. We review this type of decision for an abuse of

discretion. *In re Meyer*, 98 Ohio App.3d 189, 192-193 (3d Dist. 1994). An abuse of discretion is more than an error of law or judgment. *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 12. Rather, it implies the juvenile court's decision was unreasonable, arbitrary, or unconscionable. *In re T.G.O.*, 12th Dist. Madison No. CA2017-05-012, 2018-Ohio-800, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this court is not free to merely substitute our judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 138 (1990).

{¶ 34} On the other hand, because R.C. 2151.271 and Juv.R. 11(B) make a change of venue mandatory if other proceedings involving the child(ren) are pending in the juvenile court of the county where the child(ren) resides, "the proper standard of review is a mixed question of law and fact." *In re S.M.*, 4th Dist. Lawrence No. 09CA5, 2009-Ohio-3118, ¶ 22. "Under this standard, we defer to the [juvenile] court's factual findings if competent, credible evidence supports them." *Id.* Competent evidence is admissible evidence for the purpose of proving a relevant fact. *In re Meeks*, 11th Dist. Lake No. 95-L-050, 1995 Ohio App. LEXIS 4369, *13-14 (Sep. 29, 1995). Credible evidence means evidence found worthy of being believed. *Hall v. Hall*, 6th Dist. Sandusky No. S-18-011, 2018-Ohio-4453, ¶ 8. "Then, accepting the [juvenile] court's facts as true, we independently determine whether the [juvenile] court properly applied the law to the facts." *In re S.M.* at ¶ 22.

**Analysis**

{¶ 35} The issue in this case is not whether the Hamilton County Juvenile Court erred by initially transferring Father's motion for legal custody of A.T. and D.T. to the Butler County Juvenile Court. Rather, the issue in this case is whether the Butler County Juvenile Court erred by declining the Hamilton County Juvenile Court's transfer of Father's motion. Mother argues the Butler County Juvenile Court erred in this regard because there are two cases currently pending in the Butler County Juvenile Court regarding Father's failure to pay his

child support obligation; namely, Case No. JS2012-1123 regarding A.T. and Case No. JS2011-0924 regarding D.T.

{¶ 36} After a full and thorough review of the record properly before this court, which we note is limited under App.R. 18(C) due to the fact Father did not file a brief in this case, we agree with Mother's position. This is because, as the record indicates, there are now two cases currently pending before the Butler County Juvenile Court regarding Father's failure to pay his child support obligation. Because a child support order had been established requiring Father to pay child support for both A.T. and D.T., it is implicit that the Butler County Juvenile Court had established paternity of the children by acknowledgment or otherwise. Considering the Butler County Juvenile Court had pending matters regarding Mother, Father, as well as both A.T. and D.T. in both Case Nos. JS2012-1123 and JS2011-0924, it was the Butler County Juvenile Court, not the Hamilton County Juvenile Court, that had jurisdiction over these matters – including Father's petition for a DVCPO he improperly filed in the Hamilton County Domestic Relations Court.

{¶ 37} Despite being intimately familiar with this case, the Butler County Juvenile Court nevertheless declined to accept the transfer of Father's motion from the Hamilton County Juvenile Court. Unfortunately, the record does not provide this court with any basis for the juvenile court's decision as to why it decided Father's motion for custody should be litigated before the Hamilton County Juvenile Court. The record merely indicates the juvenile court decided to decline the transfer after it "discussed this matter with Hamilton County Juvenile Court and it is this court's understanding that the Hamilton County Juvenile Court will be proceeding in this matter." But, as the record indicates, the Butler County Juvenile Court contacted the Hamilton County Juvenile Court only *after* it had already decided to decline the transfer.

{¶ 38} "'[F]or this court to be able to conduct any meaningful review of the trial court's

exercise of its discretion, we must be able to discern some basis for its decision.'" *In re Q.R.*, 12th Dist. Clinton No. CA2017-11-020, 2018-Ohio-4785, ¶ 14, quoting *In re Estate of Murray*, 11th Dist. Trumbull No. 2004-T-0030, 2005-Ohio-1892, ¶ 26. In this case, however, the Butler County Juvenile Court provided no basis for how it ultimately came to its decision to decline the transfer of Father's motion from the Hamilton County Juvenile Court. Simply stated, what prompted the juvenile court to decline the transfer in this case is unknown and requires this court to speculate as to the juvenile court's reasoning. We decline to engage in such speculation. Therefore, due to the limited record before this court in accordance with App.R. 18(C), this case must be reversed and remanded to the Butler County Juvenile Court for further proceedings.

{¶ 39} In reaching this decision, we note that any decision the Butler County Juvenile Court makes must provide a clear indication of its reasoning and analysis so that this court can, if necessary, perform a meaningful appellate review. Such a review may not be necessary in this case considering Father notified this court that "venue/forum for this action is immaterial to the disposition of the underlying substantive issues in this case." Therefore, due to the need for finality in determining who should be awarded custody of the children at issue in this case, the Butler County Juvenile Court may reconsider its prior decision and find or not find that accepting the transfer of Father's motion for legal custody from the Hamilton County Juvenile Court is proper. Whatever decision the juvenile court makes must take into consideration the best interests of the children. Mother's first assignment of error is sustained and this matter is remanded for further proceedings.

{¶ 40} Assignment of Error No. 2:

{¶ 41} THE BUTLER COUNTY JUVENILE COURT ERRED IN ISSUING NUNC PRO TUNC ORDERS ON MAY 21, 2018, STRIKING THE [APRIL] 23, 2018 FINAL APPEALABLE ORDER, WHEN NOTICES OF APPEAL HAD BEEN FILED ON MAY 18,

- 15 -

2018.

{¶ 42} In her second assignment of error, Mother argues the Butler County Juvenile Court erred by issuing an order clarifying its decision declining the transfer of Father's motion for legal custody after she filed her notice of appeal in this case. In light of our holding under Mother's first assignment of error, we find Mother's second assignment of error moot. In so holding, we note that it was Mother who requested the juvenile court to issue the order clarifying its decision she now claims is null and void. Therefore, even assuming we were to find error, any error the juvenile court may have made by issuing an order clarifying its decision declining to accept the transfer of Father's motion for legal custody of A.T. and D.T. was invited by Mother's own actions. Mother's second assignment of error is dismissed as moot.

{¶ 43} Judgment reversed and remanded for further proceedings.

RINGLAND and HENDRICKSON, JJ., concur.