OPINION
{¶ 1} This is an appeal from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, awarding permanent custody of Heather and Veronica Brooks to Franklin County Children Services ("FCCS"). For the reasons that follow, we affirm in part and reverse in part, and remand to the trial court with instructions.
 {¶ 2} On March 1, 2000, FCCS filed a complaint alleging that Heather and Veronica Brooks were neglected and dependent children. Their father, Ronn Brooks, had engaged in numerous acts of domestic violence against their mother, Jennifer Brooks. On March 15, 2000, the Franklin County Juvenile Court issued a temporary order of protective supervision over Heather and Veronica. On March 22, 2000, the juvenile court issued an emergency care order. Pursuant to the terms of the order, the children were removed from their home at that time and placed with FCCS during the pendency of the complaint.
 {¶ 3} FCCS later dismissed the complaint and filed two new complaints based on Veronica's allegations of sexual abuse by Mr. Brooks. On November 20, 2000, the magistrate held a dispositional hearing in both cases, adopted the case plan recommended by FCCS, and ordered the children be made wards of the court. The magistrate found Veronica to be abused, dependent and neglected, and found Heather to be a neglected and dependent minor. On December 14, 2000, the magistrate issued a judgment entry awarding temporary custody to FCCS. The case plan required appellant to complete a psychological assessment and follow-up treatment, to complete domestic violence counseling with no further incidents of domestic violence, to complete parenting classes and to demonstrate what she learned to FCCS. Further, Ms. Brooks was to be appropriate with the children and learn to protect them, to abide by the children's wishes, and not speak about their father.
 {¶ 4} On May 23, 2001, FCCS filed motions to terminate the parental rights of Ms. Brooks and grant FCCS permanent custody. FCCS re-filed the motion on August 14, 2001. On July 12, 2002, the magistrate granted the motion for permanent custody and denied alternative custody motions filed by Ms. Brooks, the paternal grandparents and the maternal grandfather. By this time, the children had been in the custody of FCCS for a total of 27 months. The magistrate determined that if the children remained in their home, it would be contrary to the children's welfare since the circumstances giving rise to the original complaint had not been alleviated. The magistrate further determined that it was in Heather and Veronica's best interests to terminate Ms. Brooks' parental rights pursuant to R.C. 2151.414(E)(1). On July 24, 2002, Ms. Brooks' trial counsel filed a one-page pro forma objection to the juvenile court's report. On March 3, 2003, the trial court overruled the objection. This appeal followed.
 {¶ 5} Appellant asserts the following assignments of error:
1. The trial court erred by terminating the appellant's parental rights, as that judgment was against the manifest weight of the evidence and was unsupported by clear and convincing evidence.
2. The trial court erred by terminating the appellant's parental rights, when the evidence clearly and convincingly established that the appellant had substantially complied with the case plan.
3. The trial court erred by terminating the appellant's parent rights, when the appellant did not receive the effective assistance of counsel guaranteed by the Ohio and United States Constitutions.
* * *
B) Appellant's trial counsel was ineffective by failing to assert that the appellee was not statutorily authorized to file permanent custody motions and the court lacked statutory authority to proceed on the appellee's motions.
* * *
4. The trial court erred by terminating the appellant's parental rights when it failed to find the presence of one of the 16 factors listed in R.C. 2151.414(E).
 {¶ 6} The magistrate found the following facts. FCCS first removed the children from the home in March 2000 due to the abuse that was taking place. FCCS alleged that Mr. Brooks engaged in numerous acts of domestic violence against Ms. Brooks, and Veronica alleged sexual abuse by Mr. Brooks. After removal, Veronica began therapy with FCCS counselor Linda Brancato. As part of her therapy, Veronica drafted a document entitled "My Story" which detailed the alleged sexual abuse perpetrated upon her by Mr. Brooks. Ms. Brooks was allowed to visit with the children for one hour per week, in the presence of the caseworker, Emily Ledvinka.
 {¶ 7} During the first year after the children were removed, Ms. Brooks continued to live with Mr. Brooks but told FCCS they were separated. Ms. Brooks and the paternal grandparents continued to believe that Veronica's allegations of sexual abuse were not true. Ms. Brooks questioned Veronica's allegations even after Veronica recited "My Story" to her during a visit. Over a year after removal, Ms. Brooks left Mr. Brooks and eventually divorced him. However, she continued to be victimized and harassed by Mr. Brooks. Ms. Brooks finally prosecuted Mr. Brooks for robbery and he is currently serving three years in prison. Mr. Brooks' sentence runs until 2004.
 {¶ 8} The magistrate further found since Mr. Brooks' imprisonment, Ms. Brooks is faced with harassment from his parents, the paternal grandparents. They stay in their vehicle in the area of Ms. Brooks' employment and her home. The magistrate described Ms. Brooks as a "marked woman." (Magistrate Opinion at 2.) "Having broken free from Ronn Brooks, she now has his extended family watching over her at work and at home." Id.
 {¶ 9} Ms. Brooks eventually starting taking steps in compliance with her case plan. The magistrate found that Ms. Brooks visited her children with great regularity. At the time of trial, Ms. Brooks had her own residence and a steady job. She went to individual counseling, parenting classes and domestic violence classes as set forth in the case plan. However, the magistrate found that part of the case plan included the need for Ms. Brooks to communicate to her children that she supports them and believes them. Two years after removal, and only days before the commencement of trial, Ms. Brooks told Veronica she believes her allegations. The magistrate found this did not amount to case plan compliance.[1] Further, the magistrate discussed the psychological impact all this had on both Veronica and Heather. The caseworker felt there was no bond between Heather and Ms. Brooks and only a tenuous bond between Veronica and Ms. Brooks. Heather was diagnosed with Post-Traumatic Stress Disorder because of her chaotic violent life with her family. Veronica is hyperactive, has problems with peer interaction, and severe problems with self-harm statements. The magistrate concluded pursuant to R.C. 2151.414(B)(1)(d), the children had been in the custody of FCCS for 12 months in a 22-month consecutive period. The children were removed in March 2000, and the trial ended in July 2002. Therefore, the magistrate determined that termination of parental rights was appropriate.
 {¶ 10} Ms. Brooks claims that FCCS had its mind made up about the placement of the children from the beginning and did not intend to return them to her even though she substantially complied with the case plan. She argues that although she was in an abusive situation, FCCS did very little to help her out of it and reunify her with the children. She claims that FCCS gave her vague instructions and she was confused as to how to address the children's abuse by and fear of their father. She also complains that she could only see her children for one hour per week and always in the presence of the caseworker.
 {¶ 11} In the third assignment of error, Ms. Brooks contends that she was denied effective assistance of counsel for various reasons. One enumerated reason questions the jurisdiction and authority of the juvenile court to hear this case and will be addressed first. Ms. Brooks maintains that trial counsel was ineffective by failing to assert that the appellee was not statutorily authorized to file permanent custody motions and the court lacked statutory authority to proceed. We disagree.
 {¶ 12} FCCS moved for permanent custody under R.C. 2151.413
generally. In its accompanying memorandum, FCCS checked the box stating that it would prove by clear and convincing evidence the children were in temporary custody for 12 or more months of a consecutive 22-month period. See R.C. 2151.413(D)(1) and 2151.414(B)(1)(d). Ms. Brooks maintains that FCCS moved for custody under R.C. 2151.413(D)(1). That section states that an agency with custody shall file a motion requesting permanent custody of a child if the child has been in the temporary custody of an agency for 12 or more months of a consecutive 22-month period. Ms. Brooks argues that FCCS must wait until 22 months expires before filing.
 {¶ 13} For purposes of computing 12 months of a consecutive 22-month period, "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated * * * or the date that is sixty days after the removal of the child from home." R.C. 2151.413(D)(1); (emphasis added). Here, the children were removed from home on March 22, 2000. Sixty days from that date is May 21, 2000. The children were adjudicated on November 20, 2000. Therefore, the earlier date is May 21, 2000. FCCS moved for permanent custody on May 23, 2001. The children were in the temporary custody of FCCS this entire time.
 {¶ 14} In In re Sypher (Mar. 11, 2002), Belmont App. No. 01-BA-36, the appellant made a similar argument to Ms. Brooks. She argued the court failed to apply the word "consecutive" in R.C. 2151.413(D)(1). Appellant argued that since the agency took custody of the children on May 5, 2000, the 22-month period did not end until March 2002; therefore, the agency prematurely filed in March 2001. The court rejected this argument. Id. "There is no requirement in the statute that an agency must wait until the entire twenty-two month period has run before filing a motion pursuant to R.C. 2151.413(D)(1)." Id. The court further found that notwithstanding R.C. 2151.413(D)(1), the agency could properly file a motion for permanent custody under R.C. 2151.413(A). Id. R.C. 2151.413(A) provides that an agency that is granted temporary custody of a child who is not abandoned or orphaned may file a motion requesting permanent custody in the court that made the disposition. Id. Therefore, the court held that the agency's motion for permanent custody was proper. Id.
 {¶ 15} We do not find it necessary to determine whether FCCS is required to wait until the entire 22-month period has run before filing a motion for permanent custody. FCCS properly filed its motion under R.C.2151.413(A). Sypher, supra. R.C. 2151.413(A) does not contain a time limitation within which the agency must file. In re Austin (Dec. 19, 2001), Allen App. No. 1-01-79 (there is no requirement that the agency have temporary custody for a certain time period before moving for permanent custody); In re Dyal (Aug. 9, 2001), Hocking App. No. 01CA12 (stating that while the agency's motion for permanent custody was premature under the 12 out of 22 months language, the motion was proper because the agency had temporary custody and there is no time limit under R.C. 2151.413[A]). The only requirements under section R.C. 2151.414(A) are: (1) FCCS was granted temporary custody prior to seeking permanent custody; (2) FCCS must file in the court that made the disposition; and (3) the children must not be orphaned or abandoned. These requirements are met in this case. Therefore, FCCS' motion was proper. This is particularly true in light of the fact that FCCS moved under R.C. 2151.413
generally. Accordingly, Ms. Brooks' third assignment of error subsection (B) with respect to the authority of the juvenile court and counsel's ineffectiveness, is overruled. The court had jurisdiction to hear the permanent custody motions in this case.
 {¶ 16} We now turn to Ms. Brooks' first and second assignments of error. In the first assignment of error, Ms. Brooks argues the trial court erred by terminating her parental rights, as that judgment was against the manifest weight of the evidence and was unsupported by clear and convincing evidence. In the second assignment of error, Ms. Brooks argues that because clear and convincing evidence shows she substantially complied with the case plan, grant of permanent custody to FCCS was error. These assignments argue the same thing, whether the trial court's judgment to terminate parental rights is against the manifest weight of the evidence, and will be addressed together.
 {¶ 17} Judgments supported by some competent, credible evidence going to all essential elements of a case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Williams, Franklin App. No. 02AP-924, 2002-Ohio-7205.
 {¶ 18} In this case, FCCS had to prove by clear and convincing evidence that one of the factors under R.C. 2151.414(B)(1) was met and permanent custody was in the best interests of the children. Clear and convincing evidence is that measure of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. Williams, supra. FCCS alleged and the trial court found that the children met subsection (d), that they were in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period.[2] For purposes of R.C. 2151.414(B)(1)(d), we find the required 12 months passed prior to FCCS filing the motion and over 22 months elapsed prior to the end of trial in this matter. Therefore, the trial court correctly found subsection (d) was met.
 {¶ 19} In determining the best interests of a child under R.C.2151.414(D), the court shall consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) of this section apply in relation to the parents and child. R.C.2151.414(D). The factors set forth in R.C. 2151.414(E)(7) to (11) include whether the parents have been convicted of or pled guilty to various crimes; whether medical treatment or food has been withheld from the child; whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; whether the parent has abandoned the child; and whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 20} In this case, the magistrate's findings, as detailed above, indicate that he considered the above factors in light of the facts of the case. The magistrate stated "Permanent Court Commitment (PCC) serves the best interest of these children to FCCS. Under Ohio Revised Code (ORC) 2151.414(D), best interests have been considered." (Magistrate Opinion at 5.) The magistrate then specifically found that Heather and Veronica are very close to each other and Veronica has assumed a parental role to Heather since before removal from the home. Neither Veronica nor Heather feel close to Ms. Brooks and both had a desire to remain with their foster family. Neither child had seen Mr. Brooks since removal. The magistrate found the children identified with their foster parents as their parents, that no relatives were appropriate for placement, that the children had been in the temporary custody of FCCS for over two years by the time trial ended, and that the only legally secure placement for the children was with FCCS. These findings indicate that the magistrate considered all the best interest factors and balanced those factors together with additional relevant factors, namely Ms. Brooks' assertions regarding substantial case plan compliance.
 {¶ 21} Although the trial court affirmed the magistrate's decision, its opinions do not indicate that it considered all the best interest factors. Most of its decision discusses the evidence provided by the children's therapists and the psychological trauma suffered by the children. In a conclusory fashion, the trial court states in its decisions "[i]n accordance with R.C. 2151.414(B) it has been established at trial that a grant of permanent custody to [FCCS] would be in the best interest of Veronica [Heather]. The Court cannot risk placing Veronica [Heather], a defenseless child traumatized by sexual and emotional abuse back in the custody of a person that has shown she is not capable of protecting herself, let alone her young child." The court then states that FCCS has proven the children were in temporary custody for 12 of 22 months pursuant to R.C. 2151.414(B)(1)(d).
 {¶ 22} Although this court has held that a trial court need not specifically enumerate each best interest factor in its decision and entry, the court must state findings on the record so that it is clear to the parties that the decision is supported by the facts. In re Strong, Franklin App. No. 01AP-1418, 2002-Ohio-2247 ("even though the magistrate's `best interest' determination was challenged in the mother's objections, there is no indication from a review of the court's entry that it considered the statutory factors regarding that issue"); In the Matter of Heyman (Aug. 13, 1996), Franklin App. No. 96APF02-194 ("[a]lthough a trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision, in this case, there is no indication from the trial court's decision or its findings of fact and conclusions of law that it gave any consideration to the [best interest] factors").
 {¶ 23} Here, the trial court does not indicate whether it considered the children's wishes, the interrelationship between the children and Ms. Brooks, each other, and foster families, the need for a legally secure placement and whether that could be accomplished without granting permanent custody to FCCS. In fact, the trial court does not mention any of the best interests factors or the statutory provision relating to such factors to show that they were considered. R.C.2151.414(D)(1) through (5). We recognize that the magistrate's decision, which the trial court adopted, makes reference to the statutory provision, however the trial court "`is required by statute to find, by clear and convincing evidence, that certain criteria have been met, and the court must state those findings on the record, such that it is clear to all parties that the decision is supported by the facts.'" Strong, supra, quoting In re Brown (1994), 98 Ohio App.3d 337, 343. Given the nature and impact of a trial court's decision to grant permanent custody, we must remand to the trial court. On remand, the trial court must analyze the best interest factors and any additional relevant factors, and must state findings to indicate that such an analysis was conducted. Accordingly, Ms. Brooks' first and second assignments of error are sustained.
 {¶ 24} Because we remand to the trial court, we decline to address the remaining arguments of the third assignment of error and decline to address the fourth assignment of error, and they are overruled as moot.
 {¶ 25} Appellant's first and second assignments of error are sustained, the third and fourth assignments of error are overruled as moot, and the case is remanded to the trial court for proceedings consistent with this opinion.
Judgments affirmed in part and reversed in part, and cause remanded with instructions.
BOWMAN and BROWN, JJ., concur.
[1] Ms. Brooks also allowed another man to move into her home while the children were in foster care. It turned out that this man had a criminal record, including domestic violence and assault. Ms. Brooks testified at trial that he was in the process of moving out of her home.
[2] For purposes of computing 12 months of a consecutive 22-month period, a child is considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated or the date that is sixty days after the removal of the child from the home. R.C.2151.414(B)(1). As previously stated, the children were first removed from the home March 22, 2000, and remained in the custody of FCCS until the end of trial.