[Cite as *In re A.M.*, 2019-Ohio-2028.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: A.M. | : | APPEAL NO. C-190027 |
| | | TRIAL NO. F16-2559 |
| | : | |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 24, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Nicholas Varney,* Assistant Prosecuting Attorney, for Appellee Hamilton County Department of  Job and Family Services,

*Cynthia S. Daugherty*, for Appellant Mother,

*Treleven Law LLC* and *Celia Klug*, Guardian ad Litem for A.M.

**MOCK, Presiding Judge.**

{¶1} In one assignment of error, appellant Mother claims that the trial court's decision to grant permanent custody of her daughter A.M. to the Hamilton County Department of Job and Family Services ("HCJFS") was based upon insufficient evidence and was contrary to the manifest weight of the evidence. We affirm the trial court's judgment.

### Young Mother Struggles with Raising Newborn

{¶2} A.M. was born on November 10, 2015. At the time of her birth, A.M.'s mother was 16 years old and was living in a foster home. Mother had had a troubled history up to that point, having been sexually assaulted while in the care of one of her foster families. Because Mother was in foster care, she received assistance through her caseworker from appellee HCJFS that included requirements for Mother to attend therapy, participate in her med-somatic program, attend school, stop using illegal drugs, and submit to random drug screens.

{¶3} Between the time of A.M.'s birth until HCJFS sought protective orders for A.M. in December of 2016, Mother had not successfully completed therapy, was not consistent with her med-somatics, was not consistently attending school, had engaged in several instances of angry outbursts in her foster home, and continued to use marijuana. Between the time when HCJFS first sought protective orders through the time that HCJFS sought interim custody of A.M. in June of 2017, Mother was to follow the same case plan. But during that time, Mother again failed to consistently engage in her med-somatics, failed to consistently engage in substance-abuse treatment, continued to use marijuana, continued to be a problem in her foster home, and continued to have disciplinary issues in school. Mother's history continued from that point until the day of the permanent-custody trial. She

2

did not engage in therapy, did not take her medication, did not successfully engage in parenting classes, and continued to use marijuana.

{¶4}　From the time of A.M.'s birth until the date of trial, Mother had failed to successfully complete any aspect of her case plan. At trial, Mother's caseworker testified that, throughout this entire timeframe, she had seen no change in Mother's behavior which would cause her to believe that she could safely parent a child on a long-term basis. She had no reason to believe that Mother would change given more time, and there were no additional services that could be offered to Mother that would render her an appropriate parent for A.M.

{¶5}　Mother had a history of not engaging in the services offered to her designed to prepare her to be a caregiver to A.M. While she had been in therapy, she stopped going and missed the last few appointments before her Medicaid was terminated. And her Medicaid was terminated because she chose to become emancipated rather than remaining in the system with HCJFS. Her caseworker cautioned her strongly against this decision, but Mother indicated that she no longer wished to live under the rules of her foster parents and HCJFS. Mother did not engage in recommended mental-health treatment because she didn't think she needed it and refused to go.

{¶6}　Mother's employment history was also sporadic. Her caseworker testified that she had had several jobs, but could not retain them. She recalled at least three instances where she had been fired after just a few months. She was fired from a McDonald's because of animosity between her and the owner's daughter, she was fired from a Wendy's because she repeatedly failed to come to work on time, and she was fired from a factory job for the same reason. At the time of trial, Mother testified that she had a job as a housekeeper at a hotel, but she had been there less than a month.

3

{¶7}    And the record demonstrates that Mother did not believe her drug use was a problem.  She said that her family had smoked marijuana when she was growing up, and she had continued to use marijuana every few days through the date of the trial.  She told her caseworker that she was not going to stop.  Her history of drug screens have shown either that she tested positive for marijuana or that she had failed to submit to testing.  On a number of occasions, she snuck out of her foster home in Dayton and came to Cincinnati with A.M. to spend time with the child's father, and he used marijuana in front of the child.  When asked if she thought this was a problem, she said it was not because the father was no different when he was high than he was at other times.  When asked at trial about her continued marijuana use, she said she could "quit today."  When asked why she had not stopped before that point, her response was, "Why you all want me to be on medicine?"  When asked again, she responded, "Because I haven't."

{¶8}    Mother also had a history of anger and violent outbursts.  A.M. was initially removed from Mother's custody because she had not been attending school regularly, was testing positive for drugs, and had had outbursts in her foster home.  On several occasions, her anger had resulted in damage to the home when Mother had punched holes in the walls or doors and had thrown a chair.  A.M. was present during some of these outbursts.  A number of these instances resulted in the involvement of law enforcement.  Her caseworker said, at that time, Mother had not been successful in dealing with her behavioral issues, that there had been a gradual increase in the level of her aggression, and that she had refused to either engage in or complete the services required of her.  In 2016, she had been suspended from school a couple of times for her aggressive behavior.

{¶9}    In addition to her own anger issues, there was an issue of violence between Mother and A.M.'s father.  There was one incident in which the father

became violent with Mother, but she did not think that was a "big deal." There were also a number of violent arguments outside the courthouse building in which Mother and A.M.'s father engaged in shouting matches on the sidewalk. When asked if such things were appropriate, Mother initially responded, "We can't argue?" She did not understand why it was a problem that A.M.'s father hit her, because A.M. was nearby in the car and was not in immediate danger.

{¶10} The record reflects that A.M. has a strong bond with her mother. Mother's caseworker acknowledged, "[f]rom the times that I have observed [Mother and A.M.] have a really good relationship * * * [t]hat has never been a question * * * [t]hey are very closely bonded." Mother's therapist also vouched for the fact that Mother had been making progress, until she stopped coming to her therapy sessions.

{¶11} But the record does not reflect that Mother's affection for A.M. had effectively translated to a determination to change her behavior. Mother had been told repeatedly by her caseworker that her failure to comply with her case plan could result in A.M. being permanently taken from her. But Mother's conduct did not change. Mother's initial period of visitation from February to June of 2017 was terminated due to her lack of participation. Visitation began again in January of 2018, but again ended in June because of her lack of participation. Her visitations began again in July. Her visits between that point and the trial date at the beginning of September had been consistent except for one occasion. In August of 2018, she told her caseworker that she could not attend a visit because she had to go to orientation for parenting classes, but the caseworker later learned she did not attend the orientation.

{¶12} While she did take some parenting classes, she was terminated from that program for lack of participation. While she did attend some counseling, she stopped going and then she allowed her Medicaid to expire so she could not return.

While she attended visits with A.M., her ability to do so was repeatedly terminated because she stopped coming. Rather than follow the rules of her foster family and HCJFS, Mother chose to seek emancipation, despite warnings that it was not in her best interest, and then failed to ensure that her Medicaid continued, in spite of repeated warnings to make sure it continued.

{¶13} At the time of trial, A.M. was thriving in her foster care placement. The foster parent had been working with her on improving her speech, making her say the names of things rather than point to them, and reading to the child. A.M. was healthy, attending daycare, and had no medical or developmental issues. Mother's caseworker testified that A.M. began to recognize the building where the visitation occurred, and knew that it was her time to be with her mother. And when Mother failed to show up for the visit, A.M. would be devastated and inconsolable for some time.

**The Case Below**

{¶14} Procedurally, this case began on December 1, 2016, when HCJFS filed a complaint, affidavit, and motion for interim custody of A.M. The motion was subsequently modified to seek only interim protective orders. The parties agreed to the interim protective order at the initial hearing the next day. On February 10, 2017, A.M. was adjudicated dependent and the magistrate issued an order allowing A.M. to remain with mother under the protective supervision of HCJFS. On June 14, 2017, HCJFS filed a second complaint, affidavit, and motion for interim custody of A.M., to which the parties agreed. The magistrate again adjudicated A.M. dependent and granted temporary custody to HCJFS. On March 22, 2018, HCJFS filed a motion to modify the temporary custody to permanent custody. The permanent-custody hearing was held on August 6 and August 8, 2018. The magistrate issued a decision on September 17, 2018, granting permanent custody of A.M. to HCJFS and

6

terminating Mother's parental rights. Mother objected to the decision, arguing that it was based on insufficient evidence and was contrary to the manifest weight of the evidence. The trial court overruled Mother's objections to the magistrate's decision. Mother now appeals, raising one assignment of error.

**The Permanent-Custody Determination**

{¶15} In one assignment of error, Mother argues that the trial court erred by granting HCJFS's motion for permanent custody when it "concluded by clear and convincing evidence that permanent custody to HCJFS was in the best interest of the child when that decision lacked sufficient evidence and was against the weight of the evidence."

{¶16} R.C. 2151.414(B) provides that the juvenile court may grant permanent custody of a child to a public children services agency if it finds that (1) permanent custody is in the child's best interest and (2) that one of the conditions in R.C. 2151.414(B)(1) through (e) applies. *In re M., R., & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 17. The trial court's award of permanent custody must be supported by clear and convincing evidence. *In re W.W.*, 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, ¶ 46. "Clear and convincing evidence" is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. We will not substitute our judgment for that of the trial court applying a clear-and-convincing standard where there is ample competent and credible evidence supporting the trial court's determination. *See In re A.J.O. and M.N.O.*, 1st Dist. Hamilton No. C-180680, 2019-Ohio-975, ¶ 6.

{¶17} Mother claims that the decision was based upon insufficient evidence and was contrary to the manifest weight of the evidence. To evaluate the sufficiency of the evidence, this court examines

> whether some evidence exists on each element. It is a test of adequacy, and whether the evidence is sufficient to sustain the judgment is a question of law. Our review for weight asks whether the evidence on each element satisfies the burden of persuasion, which in this case was a clear and convincing standard.

(Citations omitted.) *In re A.B.*, 1st Dist. Hamilton No. C-150307, 2015-Ohio-3247, ¶ 15. Related to but distinguishable from sufficiency of the evidence, the weight-of-the-evidence standard requires an evaluation of all the evidence, weighing the evidence and reasonable inferences, and considering the credibility of the witnesses, to determine whether the court lost its way in resolving conflicts in the evidence, which resulted in a manifest miscarriage of justice. *Id.* at ¶ 16; *Eastly v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179. 972 N.E.2d 517, ¶ 23 (noting the distinction between sufficiency and weight-of-the-evidence standards).

### The R.C. 2151.414(B)(1) Factors

{¶18} While Mother only addressed the best-interest determination in the language of her assignment of error, her argument addresses both the best-interest determination as well as the trial court's decision regarding the R.C. 2151.414(B)(1) factors. In order to grant permanent custody of A.M. to HCJFS, the trial court had to conclude that one of the four conditions in R.C. 2151.414(B)(1) applied. These conditions are (a) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, (b) the child is abandoned, (c) the child is orphaned and no relatives are able to take permanent custody, or (d) the child had been in the temporary custody of the agency for 12 or more months of a

8

consecutive 22-month period ("12 of 22") at the time the agency moved for permanent custody. *See* R.C. 2151.414(B)(1)(a) through (d); *see also In re A.B.* at ¶ 29.

{¶19} The magistrate determined that A.M. could not be placed with Mother within a reasonable time or should not be placed with Mother. *See* R.C. 2151.414(B)(1)(a). The trial court concluded likewise. We note that the trial court also concluded that "[t]he child has been in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period." *See* R.C. 2151.414(B)(1)(d). A child shall be considered to have entered the temporary custody of an agency on the date the child is adjudicated pursuant to R.C. 2151.28 or the date that is 60 days after the removal of the child from the home, whichever is earlier. *In re W.W.*, 1st Dist. Hamilton No. C-110363, 2011-Ohio-4912, at ¶ 50. HCJFS received temporary custody of A.M. on June 16, 2017, when the trial court granted the interim order. A.M. was adjudicated dependent on September 20, 2017. The motion for permanent custody was filed on March 22, 2018. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, syllabus (12-of-22 calculation determined from date agency gains temporary custody to the date of the filing of the motion for permanent custody). Counting from August 15, 2017, (the date of custody plus 60 days), A.M. was in the custody of the agency for purposes of R.C. 2015.414(B)(1)(d) for just over seven months. But since the trial court found that both R.C. 2151.414(B)(1)(a) and (d) applied, the error of the trial court is not outcome-determinative. *See In re J.D.*, 8th Dist. Cuyahoga No. 106826, 2018-Ohio-4118, ¶ 34 (error in 12-of-22 determination not outcome-determinative where trial court made alternate R.C. 2151.414(B)(1)(a) determination). Further, Mother only argues the application of the R.C. 2151.414(B)(1)(a) factors, so we need not address the matter further.

9

{¶20} When determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with the parents, the trial court is instructed to consider all relevant evidence. R.C. 2151.414(E). In order to make the finding, the trial court must find that at least one of several enumerated factors is present by clear-and-convincing evidence. *See* R.C. 2151.414(E)(1) through (16).

{¶21} In her analysis, the magistrate cited three provisions under R.C. 2151.414(E) that applied. The magistrate first found that Mother had failed continuously and repeatedly to remedy the conditions causing A.M. to be placed outside the home. *See* R.C. 2151.414(E)(1). The record amply supports this conclusion. Mother admitted during cross-examination that she had completed none of the programs she had been ordered to complete relating to parenting and domestic violence. She continues to use marijuana, telling her caseworker that she refuses to stop. She did not complete her education, despite being ordered to do so by the trial court. And her employment history was sporadic.

{¶22} The magistrate also noted Mother's mental-health and substance-abuse issues. *See* R.C. 2151.414(E)(2). Mother had been diagnosed with "Unspecified Disruptive Impulse Control and Conduct Disorder." The magistrate also noted that she had other mental-health issues, but had not sought any treatment since her emancipation. Additionally, the magistrate again referenced Mother's marijuana use, noting that Mother had been cited for marijuana possession during the pendency of the proceedings.

{¶23} The magistrate also noted that Mother had done little to support A.M. *See* R.C. 2151.414(E)(14). The only times that the record reflects that Mother provided any support for her child was when Mother "was under the umbrella primarily of HCJFS and a sound placement in foster care."

10

{¶24}    While A.M. had been in the custody of HCJFS for a relatively short period of time, HCJFS had been working with Mother on her parenting skills since the child was born.   As A.M. approached her third year of life, Mother had not demonstrated that she was willing to change any of the fundamental issues that had caused A.M. to be removed from her custody.   Mother's caseworker did not think that she would change anytime soon.   A.M.'s guardian ad litem agreed, and the trial court so found.   The trial court determined that three of the factors outlined in R.C. 2151.414(E) had been met when only one was required.   This conclusion was based upon sufficient evidence and was not against the manifest weight of the evidence.

### A.M.'s Best Interest

{¶25}    Having determined that the record supported the decision below that A.M. could not be returned to the custody of Mother in a reasonable time or should not be returned to her, we are left to consider whether the record supports the conclusion that granting permanent custody of A.M. to HCJFS was in A.M.'s best interest.   To determine the best interest of the child, the court must consider all relevant factors within R.C. 2151.414(D)(1).  That provision states that:

> In determining the best interest of a child at a hearing held pursuant to
>
> division (A) of this section or for the purposes of division (A)(4) or (5)
>
> of section 2151.353 or division (C) of section 2151.415 of the Revised
>
> Code, the court shall consider all relevant factors, including, but not
>
> limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's
>
> parents, siblings, relatives, foster caregivers and out-of-home
>
> providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

The factors listed in R.C. 2151.414(E)(7) to (11) included whether

(1) the parent had been convicted or pleaded guilty to certain criminal offenses; (2) the parent had repeatedly withheld medical treatment or food from the child when the parent had means to provide the treatment and food; (3) the parent had placed the child at substantial risk of harm two or more times due to alcohol or drug abuse or had refused to participate in further treatment two or more times; (4) the parent had abandoned the child; and (5) the parent had had parental rights involuntarily terminated with respect to a sibling of the child,

and the parent had failed to provide clear and convincing evidence that the parent can provide a legally secure permanent placement and adequate care for the health, welfare and safety of the child.

*In re M.*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 24, citing R.C. 2151.414(E)(7) through (11).

{¶26} Mother argues that "the magistrate's decision refers to R.C. 2151.414(D)(1)(a)-(e) and only offered some reasoning however no comment connected to R.C. 2151.414(D)(1)(a)." Mother argues that this factor was important because the record demonstrates that she and A.B. had a close bond. But there is no requirement that the trial court discuss the application of each statutory factor it has considered. The requirement is that the trial court consider the factors. As this court recently set forth:

This court, however, has never held that the juvenile court must "discuss" each of the best-interest factors to meet the mandate that it "consider" all the elements of R.C. 2151.414(D) when making the best-interest determination. *In re K.T.1 I*, [1st Dist. Hamilton Nos. C-170667, C-170687, C-170701 and C-170702, 2018-Ohio-1381, ¶ 14]. During the initial appeal of this case, this court reversed for the reason that the juvenile court had omitted a reference to the mandatory R.C. 2151.414(D)(1)(e) factors in its opinion, and had not otherwise provided any indication in its opinion that those factors had been considered. *Id.*

We strongly encourage the juvenile court's discussion of each factor, but we cannot find error in the juvenile court's failure to discuss each factor if the record otherwise indicates that all of the necessary factors were considered. *See id.*

13

Here, the juvenile court in its June 2018 judgment specified that it had considered all of the statutory best-interest factors when disposing of the pending motions affecting the parental rights of Mother and W.A. And, as discussed more fully below, it also stated findings that were relevant to its analysis. Thus, while the juvenile court did not discuss each best-interest factor, it was not required to do so in light of this record.

*In re K.T.1 II*, 1st Dist. Hamilton No. C-180335, 2018-Ohio-4312, ¶ 45-47. This is not a case where the trial court failed to reference the statutory provisions it had considered. The magistrate simply failed to discuss the factor further.

{¶27} The dissent agrees with Mother's position, citing a number of cases supporting its conclusion that there was "no evidence that the court actually considered it in its best-interest analysis." In *In re W Children*, 1st Dist. Hamilton No. C-180620, 2019-Ohio-690, ¶ 51, this court did say that the record must indicate that the court considered all of the factors, but we also said that "the court does not need to specifically discuss each of the best-interest factors in its decision." In *In re Allbery*, 4th Dist. Hocking No. 05CA12, 2005-Ohio-6529, ¶ 14, the court did say that a decision should be reversed when there is no evidence that the trial court engaged in the proper analysis, but in that case the trial court had done no analysis relating to the mother's custody rights and simply mentioned the father once before terminating the mother's parental rights. In *In re Q.R.*, 12th Dist. Clinton No. CA2017-11-020, 2018-Ohio-4785, ¶ 13, the court did say that the trial court's decision did not provide for the opportunity for meaningful appellate review because the decision was devoid of any reasoning or analysis, but that case involved a dispute over parenting time between parents and whether the trial court properly rejected a stipulation by the parties related to that issue. While *In re A.T.*, 12th Dist. Butler Nos. CA2018-06-115

14

and CA2018-06-116, 2018-Ohio-5295, ¶ 39, noted that any decision made below must provide a clear indication of its reasoning and analysis, that case involved the decision of the trial court not to accept the transfer of the father's motion for custody from Hamilton County. And in *In re Belanger*, 11th Dist. Ashtabula No. 2002-A-0047, 2002-Ohio-4956, ¶ 32, the appellate court did say that the record had to indicate that the trial court is required to consider all the factors listed in R.C. 2151.414(D), but the case was actually reversed because the trial court had not made clear which of the R.C. 2151.414(B) factors it had relied upon before making its best-interest determination.

{¶28} As in *In re K.T. 1 II*, the record in this case demonstrates that the trial court considered all the relevant statutory factors and it also stated findings that were relevant to its analysis. Mother had a good relationship with A.M., but she frequently failed to attend visitations, and refused to make changes to her lifestyle, which prevented her reunification with her daughter. On the other hand, A.M. has thrived while in foster care, with the only disruptions of note in the record being the occasions when Mother failed to show up for visitation. *See* R.C. 2151.414(D)(1)(a). The guardian ad litem supported the motion of HCJFS for permanent custody. *See* R.C. 2151.414(D)(1)(b). The magistrate noted that A.M. had been under either protective orders or in HCJFS custody since December 2, 2016. The magistrate also noted that "HCJFS and multiple Guardian ad Litems attempted to work with [Mother] from the time [A.M.] was born, when the child was under Orders of Protective Supervision to the present." *See* R.C. 2151.414(D)(1)(c).

{¶29} Mother argues that the decision was contrary to the manifest weight of the evidence because she and A.M. shared a bond, she had been "consistently visiting in 2018," and she could complete her case plan if given more time. But Mother had repeatedly failed to complete any of the aspects of her case plan, does

not seem to understand the danger of having the child in an environment where domestic violence and drug abuse occur, and continues to struggle with her own anger issues. While she did attend some therapy and took some parenting classes, she completed none of the programs offered to her. When asked why she had done so little to progress toward completing any of the programs offered, she said, "I don't really know. That's my fault, I guess. I haven't been - - I haven't been trying, but I haven't been trying hard enough to get into them." At the time of trial, Mother had wasted nearly the first three years of A.M.'s life spinning her wheels. *See* R.C. 2151.414(D)(1)(d).

{¶30} The dissent also asserts that the decision must be reversed because, while referencing the factors outlined in R.C. 2151.414(E)(7) through (11), the magistrate cited evidence related to the parents' visitation history with A.M., even though the referenced statutory provisions do not relate to visitation.

{¶31} But the cases cited by the dissent here are again inapplicable. In *In re E.T.*, 9th Dist. Summit No. 22720, 2005-Ohio-6087, the court concluded that the trial court had improperly determined that the children at issue had been in the temporary custody of the agency for at least 12 of the preceding 22 months, when the children had been in state custody for less than nine months. The appellate court determined that it could not, on its own, make a determination that one of the other R.C. 2151.141(E) factors was present, concluding that "[o]ur review of the record in this case does not permit us to enter a determination not considered in the first instance by the trial court." *Id.* at ¶ 15.

{¶32} And in *In re N.E.*, 12th Dist. Butler No. CA2009-12-300, 2010-Ohio-1815, the trial court was under the mistaken belief that it was required to grant permanent custody to the children's services agency pursuant to R.C. 2151.414(B)(2), when that statute did not apply. *Id.* at ¶ 34. The appellate court concluded that "we

16

must reverse the court's decision and remand this case to the trial court to determine if, having made those findings, permanent custody is proper under the 'may grant' standard in R.C. 2151.414(B)(1)." *Id.* at ¶ 36.

{¶33} Both of these cases stand for the proposition, with which no one can disagree, that if the trial court referenced the wrong statutory section and that mistake leads the trial court to misunderstand its role and level of discretion, this is an error that requires reversal. These are errors of law that cause the trial court to be misdirected in its fundamental analysis. Our case, where the magistrate simply listed the wrong facts under the wrong subsection, does not rise to this level.

{¶34} The remaining cases cited by the dissent are likewise distinguishable. In *In re J.M.*, 12th Dist. Clermont No. CA2006-11-096, 2007-Ohio-4219, ¶ 11, the court said that "the trial court's failure to make the necessary findings and to support its conclusions amounts to prejudicial error." But in that case, the appellant had requested findings of fact and conclusions of law pursuant to Civ.R. 52. *Id.* at ¶ 8. In *In re Brooks*, 10th Dist. Franklin Nos. 03AP-282 and 03AP-442, 2003-Ohio-5348, ¶ 23, the court said "[o]n remand, the trial court must analyze the best interest factors and any additional relevant factors, and must state findings to indicate that such an analysis was conducted." But in that case, the trial court had not mentioned any of the best-interests factors or the statutory provision relating to such factors to show that they were considered. *Id.* at ¶ 23. While the magistrate had done so, "the trial court is required by statute to find, by clear and convincing evidence, that certain criteria have been met, and the court must state those findings on the record, such that it is clear to all parties that the decision is supported by the facts." (Citation omitted.) *Id.* In *Belanger*, 11th Dist. Ashtabula No. 2002-A-0047, 2002-Ohio-4956, at ¶ 24, the court said "[t]he court's failure to fully discuss these factors renders its judgment facially defective and warrants its reversal." But that case addressed the

17

application of the factors listed in R.C. 2151.414(B)(1). *Id.* at ¶ 23. In its entry, the trial court had only written that "[a]ll three statutory factors alleged have been proven clearly and convincingly against Mr. Reese * * *." *Id.* at 24. The trial court did not list the factors, and the court noted that R.C. 2151.414(B)(1) had four factors, not three as the previous version of the statute had had. As a result, "it [was] unclear which three statutory factors the court is referring to." *Id.* And in *Allbery*, 4th Dist. Hocking No. 05CA12, 2005-Ohio-6529, at ¶ 14, the court said "[n]othing in the judgment entry indicates that the trial court engaged in a wide-range best interest analysis as it pertains to the children's placement with Mother." But, as discussed previously, the trial court in that case had not discussed the mother at all in its decision, and had only made one reference to the appropriateness of placing the children with the father.

{¶35} The dissent simplifies the above by asserting that this court's accepted standard might lead to a future affirmance of a decision below "just citing the statute and declaring 'you lose.' " But that is an oversimplification of the widely-accepted standard that we have applied. As the Fourth Appellate District wrote, "in the absence of findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment." *Matter of S.S.*, 4th Dist. Jackson No. 16CA7, 2017-Ohio-2938, ¶ 131, citing *Bugg v. Fancher*, 4th Dist. Highland No. 06CA12, 2007–Ohio–2019, ¶ 10. Thus, "we must affirm the trial court's permanent custody decision as long as the evidence reasonably supports it and as long as the record indicates that the court indeed considered the appropriate factors." *Id.* A record that would not support such a conclusion should not be affirmed by any court.

{¶36} The dissent concludes that this court's determination could result in a certification of a conflict with "the other districts that I have cited above." But the

dissent has failed to cite a single case with a similar procedural history or equivalent issues. None of the cases has held that the findings were inadequate or that the trial court was required to discuss each statutory factor. *See Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 613 N.E.2d 1032 (1993) ("[W]e respectfully urge our sisters and brothers in the courts of appeals to certify to us for final determination only those cases where there is a true and actual conflict on a rule of law.") If the dissent would like this to be the law in Ohio, the avenue to pursue is having the legislature add the requirement that the trial court make those findings, as it has done in other areas of the Revised Code. For example, the General Assembly amended Ohio's statutory sentencing scheme in 2011 to require a trial court to make specific findings before imposing consecutive sentences. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23.

{¶37} The magistrate referenced the appropriate statutory provisions and concluded that it was in the child's best interest for permanent custody to be awarded to HCJFS. While it cannot be argued that the magistrate's entry is anything other than poorly drafted, our task is to review the decision below, determine whether the trial court applied the correct law, and then determine if the record and the law support its decision. The trial court applied the correct law, and its decision is supported by the record and the appropriate law.

{¶38} No one would say that Mother did not have a difficult childhood. Mother is young, she has been the victim of an unspeakable violation of her person, and she does not have much outside support. And it is certainly possible that, one day, Mother may reach the point where she could provide a loving and safe home for a child. But, as of the time of trial, that day had not come, and Mother's caseworker could not foresee a circumstance where that day would come anytime soon. But this case is not about how unfair Mother's upbringing has been. The trial court was

19

tasked with determining the outcome that was in the best interest of A.M. A.M. needed a home. The trial court decided that the best way to accomplish this was to terminate Mother's parental rights to clear the way for A.M. to be adopted. On this record, that decision was based on sufficient evidence and was not against the manifest weight of the evidence.

**Conclusion**

{¶39} The decision of the trial court to terminate Mother's parental rights was based on sufficient evidence and was not contrary to the manifest weight of the evidence. We overrule her sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, J.,** concurs.
**BERGERON, J.**, dissents.

**BERGERON, J.,** dissenting.

{¶40} We often say, perhaps so much so that we have trivialized the phrase, that parental-termination cases are the family-law equivalent of the death penalty. But if we mean that—if we truly mean that—then we would insist that the trial courts making these decisions appropriately apply the governing test. That did not happen here. The magistrate's order (adopted by the juvenile court) only presented required findings on three of the five obligatory best-interest factors, and committed a legal error on the final factor. I would accordingly reverse the judgment below.

I.

{¶41} The crux of my problem with the underlying order is the magistrate and juvenile court's collective failure to actually explain their decisions, particularly when the glimpses we have of their reasoning are punctuated with errors. The majority provides quite a thorough recitation of the facts here, but in doing so, it does the work of the lower courts for them (without the benefit of the ability to judge

20

credibility). As I will elaborate upon below, this should not be our role as an appellate court—the lower courts should make the appropriate findings, which then enables us to conduct meaningful appellate review. When that does not happen, it places the appealing party at a substantial disadvantage because he or she lacks guidance on what to address on appeal, often rendering the appeal a hollow exercise. If the pages of factual findings made by the majority here had been rendered by the juvenile court, then Mother would have had a fair shot to evaluate these findings and challenge them as best she could. Unfortunately, the first time that she will see these findings is with the release of this opinion.

{¶42} Beyond the majority's factual findings, it is worth pointing out that the foster system failed both Mother and her child. Mother had been in foster care since early in her life and at one point she was raped by one of her foster parents. A.M. likewise suffered abuse at the hands of her foster parents and had to be removed from that environment. No one in a foster setting (or any setting, for that matter) should have to endure something like that.

{¶43} Testimony also established that Mother and A.M. have a very strong, loving bond. Mother's caseworker acknowledged, "[f]rom the times that I have observed [Mother and A.M.] have a really good relationship * * * [t]hat has never been a question * * * [t]hey are very closely bonded." Mother's therapist also vouched for the fact that Mother was making progress. And Mother testified that she had matured and was now better able to control some of her anger issues.

{¶44} I do not mean to suggest that Mother was a model parent, and indeed, evidence of her failures exists in the record, much of which has been chronicled above by the majority. But Mother's flaws here pale in comparison to what she and her child experienced from the foster care system. Regardless, when the evidence is contradicted, it magnifies the need for the trial court to issue findings that sort

21

through the conflicts in the evidence, resolve credibility determinations, and present findings that we (both as an appellate court and as a society) can have confidence in. We here have a Mother who was young (16 when she gave birth) and lacked a support system of any kind, had limited means, and regularly used marijuana. If the state could seize children from everyone like that, the foster system would be overrun.

## II.

{¶45}   Errors permeated the magistrate's order, which the juvenile court adopted, deeming it "well-reasoned." Let's start with the "best interest" analysis, which is where I would find reversible error. The statute obligates a court to consider at least five enumerated best-interest factors. Mother first draws our attention to the magistrate's failure to consider R.C. 2151.414(D)(1)(a) in the best-interest analysis, which entails evaluation of "[t]he interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child." R.C. 2151.414(D)(1)(a). The magistrate's order recites the statutory language, but it offers no analysis, discussion, or factual findings related to this factor.

{¶46}   Other than reciting this factor, I see no evidence that the court actually considered it in its best-interest analysis. *See In re Belanger,* 11th Dist. Ashtabula No. 2002-A-0047, 2002-Ohio-4956, ¶ 32, quoting *In re Bailey*, 11th Dist. Geauga No. 2001-G-2340, 2001 WL 824390,*5 (July 20, 2001) ("[T]he record must show that the juvenile court considered all of the factors enumerated in R.C. 2151.414(D) when reaching its judgment."); *In re W Children*, 1st Dist. Hamilton Nos. C-180620, 2019-Ohio-690, ¶ 51 (holding that the record must indicate that court considered all of the necessary factors). A court cannot simply quote the statute back to us and proclaim its work done—that frustrates our ability to conduct

meaningful appellate review and threatens basic due-process rights of aggrieved litigants. *In re Bailey* at \*5 ("Failure to discuss each of these factors when determining the best interest of the child is prejudicial error."); *In re Allbery*, 4th Dist. Hocking No. 05CA12, 2005-Ohio-6529, ¶ 14 ("Without any evidence that the trial court engaged in the proper analysis for an award of permanent custody, the judgment cannot withstand scrutiny as we cannot conduct meaningful review."); *In re Q.R.*, 12th Dist. Clinton No. CA2017-11-020, 2018-Ohio-4785, ¶ 13 ("Because the juvenile court's decision is devoid of any reasoning and analysis demonstrating why rejecting the parties' stipulation was in [the child's] best interest, the juvenile court's decision in this case does not provide this court with that opportunity," and accordingly the court reversed).

{¶47} This factor also assumes significance in light of the record at hand. HCJFS's witnesses acknowledged a strong bond between Mother and A.M. and much love between them. That is an important fact, and one that should have been weighed by the trial court. In short, the court had before it evidence on this score but offered us no factual findings that we can review.

{¶48} And recall, the magistrate was purporting to issue findings of fact and conclusions of law—at least that is how she denominated the critical portion of her order. These determinations are meant to express the rationale of the court and to aid the reviewing court in determining the basis for the lower court's decision. *See Matter of Adoption of Aiken,* 2d Dist. Montgomery No. 12522, 1991 WL 116666, \*3 (June 24, 1991) (finding the trial court's findings of fact and conclusions of law insufficient because the court did not explain the grounds on which it based its decision). Findings of fact should be " 'clear, specific and complete without unrealistic and uninformative generality on the one hand, and on the other without an unnecessary and unhelpful recital of non-essential details of evidence.' " *Id.*,

quoting Barron & Holtzoff, *Federal Practice & Procedure*, Section 2B. The failure to include any finding of fact linked to the statutory criteria defeats the entire purpose of having findings of fact. *Matter of A.T.*, 12th Dist. Butler Nos. CA2018-06-115 and CA2018-06-116, 2018-Ohio-5295, ¶ 39 ("In reaching this decision, we note that any decision the Butler County Juvenile Court makes must provide a clear indication of its reasoning and analysis so that this court can, if necessary, perform a meaningful appellate review.").

{¶49} My colleagues in the majority say this is ok, but consider the ramifications of the rule they appear to endorse—if a trial court simply copied the statute and said "parental rights should be terminated," are we prepared to uphold that? I would hope not, and I believe the better practice is that required by our sister districts, which is actually to require some modicum of discussion of the relevant factors. As a parent myself, I can't imagine my child being seized from me behind a veil of secrecy. It is not too much to ask for some minimal explanation, and to that point, I find no fault with the magistrate's one or two sentence findings concomitant to sections (B)(1)(b) through (d).

{¶50} The majority endeavors to distinguish some of the cases I've cited because they contained a request for findings of fact and conclusions of law (*see* ¶ 34) and by featuring cases that did not actually involve findings of fact and conclusions of law. *See Matter of S.S.*, 4th Dist. Jackson No. 16CA7, 2017-Ohio-2938, ¶ 131, citing *Bugg v. Fancher*, 4th Dist. Highland No. 06CA12, 2007-Ohio-2019, ¶ 10 ("[I]n the *absence of* findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly* * *.") (Emphasis added) This is not, however, a situation in which there is a complete absence of findings of fact and conclusions of law—the magistrate's order (adopted by the juvenile court) labels itself as "Findings of Fact and Conclusions of Law." Although the magistrate

24

apparently went down this path sua sponte rather than at the behest of one of the parties, the genesis of these findings does not excuse the court from accountability for its actions. The majority insists that the trial court below "stated findings that were relevant to its analysis," but I respectfully beg to differ. The magistrate stated *conclusions* and offered a few selective findings, but never rendered findings for each aspect of the best interest-inquiry and never actually analyzed the best-interest standard, which leaves us guessing as to what *facts* the court actually found persuasive. The entire point of findings of fact is to provide both the parties and the reviewing court that roadmap.

{¶51} Further underscoring these problems, the magistrate's discussion of R.C. 2151.414(D)(1)(e) highlights the importance of explaining the basis for the court's decision, because here we see that the court committed legal error. R.C. 2151.414(D)(1)(e) obliges the court to evaluate whether the provisions (E)(7) through (11) of R.C. 2151.414 apply to the child and parent. R.C. 2151.414(E)(7) asks the court to review whether the parent has been convicted or pleaded guilty to certain enumerated offenses, (E)(8) examines whether the parent has withheld medical treatment or food from the child, (E)(9) deals with a parent repeatedly placing a child at risk due to alcohol or drug abuse, (E)(10) asks if the parent has abandoned the child, and finally (E)(11) addresses whether a parent had parental rights terminated as to a sibling of the child. The magistrate's order appears to find that this factor militated in favor of permanent custody, but it reflects an application of facts that have no bearing upon the requirements under this provision. The magistrate writes "Mother has a history of sporadic visitation. Mother complained that her 8:45 AM visits * * * were too early for her. Mother missed visits and it has an adverse effect on the child." I fail to see how this analysis satisfies any of the enumerated factors in R.C. 2151.414(E)(7) through (11) as required by R.C.

2151.414(D)(1)(e), and I do not see the majority rising to the defense of the magistrate here. A fair reading of this order shows that the magistrate invoked inconsistent visitation to satisfy these criteria, and that constitutes legal error. *See In re N.E.*, 12th Dist. Butler No. CA2009-12-300, 2010-Ohio-1815, ¶ 36 (even where ultimate custody determination was correct, reversal and remand appropriate where incorrect statute was applied); *In re ET*, 9th Dist. Summit No. 22720, 2005-Ohio-6087, ¶ 12 (reverse and remand appropriate when trial court's miscalculation of "12 of 22" period caused incorrect finding that the first prong of the permanent-custody test was satisfied). The majority dismisses this error, claiming that the court simply listed "the wrong facts under the wrong subsection." But that sounds an awful lot like the definition of legal error to me, and one can search the order below in vain for anywhere that the court identified the "correct facts" and actually applied them in the best-interest analysis.

{¶52} Compounding the two errors identified above, the magistrate's order fails to engage in any sort of evaluation or balancing of the "best interests" evidence. We simply do not know how either the magistrate or the juvenile court balanced the best-interest factors because neither elucidates the point. *Belanger,* 11th Dist. Ashtabula No. 2002-A-0047, 2002-Ohio-4956, at ¶ 24 ("[W]e are unable to conclude that the court found, by clear and convincing evidence, the existence of one or more of the [R.C. 2151.414(B)(1) factors.]"). The court's failure to make the necessary findings of fact and support its conclusions amounts to prejudicial error. *In re J.M.*, 12th Dist. Clermont No. CA2006-11-096, 2007-Ohio-4219, ¶ 11 ("[T]he trial court's failure to make the necessary findings and to support its conclusions amounts to prejudicial error."); *In re Brooks*, 10th Dist. Franklin Nos. 03AP-282 and 03AP-442, 2003-Ohio-5348, ¶ 23 ("On remand, the trial court must analyze the best interest factors and any additional relevant factors, and must state findings to indicate that

26

such an analysis was conducted."); *Allbery*, 4th Dist. Hocking No. 05CA12, 2005-Ohio-6529, at ¶14 (court could not conduct proper review when "[n]othing in the judgment entry indicate[d] that the trial court engaged in a wide-range best interest analysis as it pertain[ed] to the children's placement with Mother."). Particularly when the evidence is not completely one-sided, to establish that clear-and-convincing evidence carried the day, the trial court needs to explain what that evidence is. *Belanger* at ¶ 24 ("The court's failure to fully discuss these factors renders its judgment facially defective and warrants its reversal.").

{¶53} Last year, this court reversed a parental-termination decision when the trial court failed to list the required R.C. 2151.414(D)(1)(e) factors in the course of its analysis. *In re K.T.*, 1st Dist. Hamilton Nos. C-170667, C-170687, C-170701, C-170702 and C-170707, 2018-Ohio-1381, ¶ 14 ("Omitted from this list was a reference to the mandatory R.C. 2151.414(D)(1)(e) factors. And the opinion is devoid of any other indication that the court considered those factors[.]"). We should no more tolerate the failure to correctly apply the statutory criteria than the failure to acknowledge it. Consistent with *K.T.*, I would remand this matter to the trial court "for consideration of the best-interest factors" and direct "the juvenile court on remand to state with specificity its ruling[.]" *See K.T.* at ¶ 15. If either side believed that changed circumstances since the prior hearing warranted a new hearing, I would afford them the opportunity to make such a motion for the juvenile court's consideration.

{¶54} The majority, however, features the second appeal from *K.T.*, *In re K.T.1*, 1st Dist. Hamilton Nos. C-180335, C-180376 and C-180390, 2018-Ohio-4312, for the proposition that the trial court need not "discuss" each specific factor, and this prompts several reactions. First, as explained above, I find fault in the magistrate's failure to analyze each specific section *and* her failure to explain her

27

best-interest analysis. It is this collective failure—in the context of findings of fact and conclusions of law—that reflects an abdication of the court's responsibility. To that point, when one looks at the underlying decision in *K.T.1*, the juvenile court there actually conducted a best-interest analysis that the parties could evaluate and debate on appeal. *See K.T.1* at ¶ 46 (Juvenile court "stated findings that were relevant to its analysis."). The analysis consumed over a page and a half (single-spaced) in the juvenile court's order. Here, by contrast, we lack *even a solitary paragraph of analysis on the critical best-interest standard*. Second, the court in *K.T.1* pointed out that findings of fact were neither made nor requested in that case. *Id.* at ¶ 6 and fn.1. In this case, however, the magistrate issued findings of fact, magnifying the contrast. *K.T.1* contained a page and a half of analysis *without* findings of fact, but here we have no analysis even though findings were supposedly being made. Finally, if the majority suggests that *K.T.1* excuses the juvenile court from discussing anything, then this calls to mind my hypothetical above about a lower court just citing the statute and declaring "you lose." If we are reading *K.T.1* that expansively, I would certify a conflict with the other districts that I have cited above and seek Supreme Court guidance.

III.

{¶55} Next, the majority concedes that the juvenile court erred in its finding of "12 of 22" under the statute. R.C. 2151.414(B)(1) requires the court to make one of the findings under (B)(1)(a) through (e). Oftentimes, the juvenile court will find that the child has remained in custody for "12 of 22" months, which satisfies (B)(1)(d). But with that route unavailing, the majority's acknowledgment of error just shifts the spotlight to the magistrate's analysis of the R.C. 2151.414(E)(1) through (16) factors (which we examine when proceeding under (B)(1)(a)). The magistrate's section (E) analysis reflects a series of errors, including a combination of (1) simply listing

28

factors with no actual analysis; (2) identifying factors that patently have no application here (such as parental abuse); and (3) making findings that on their face do not fit the relevant statutory criteria. And the magistrate pervasively uses "child/ren" such as "[i]t is in the best interest of the child/ren to be placed in Permanent Custody," raising questions as to whether the magistrate really offered any findings specific to this case. While we can all understand cutting and pasting for expediency's sake, it poses a risk that irrelevant sections get included, and that was on vivid display here (which generates unnecessary confusion and problems for anyone desiring to challenge the ruling).

{¶56} I'll leave aside the instances where the magistrate lists the statutory criteria but then fails to apply it because there is simply no way to evaluate whether the magistrate actually intended to make findings under these sections. The child-abuse example particularly stands out—no evidence exists in the record of any parental abuse of the child, but the magistrate nevertheless tosses that in the mix. I'll also not address examples where the magistrate references the father because this appeal concerns Mother's rights.

{¶57} Removing those instances from the equation leaves us with R.C. 2151.414(E)(2) and (E)(14). The former requires "[c]hronic mental illness, chronic emotional illness * * * or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home[.]" Here, the magistrate mentions some of the mental-health issues that Mother confronts and her use of marijuana. Those are fair considerations, but the magistrate never makes the finding that any of these issues are "so severe" that it effectively prevents the parent from offering a permanent home for the child. Nor do I see clear-and-convincing evidence of such in the record. In short, the magistrate (and juvenile court by extension) diluted the statute and found it satisfied on grounds that the General

29

Assembly never envisioned. The majority's upholding this finding exacerbates the problem by blessing this rewriting of the statute.

{¶58} The same rings true for the magistrate's analysis of (E)(14). That provision allows the court to consider whether "[t]he parent for any reason is *unwilling* to provide food, clothing, shelter, and other basic necessities[.]" (Emphasis added) Here, the magistrate faults Mother for not "provid[ing] consistently for the necessities" of A.M. Yet again, the magistrate engages in a rewriting of the statute, transforming an inability into an unwillingness. The statute, to me, does not seem designed to punish a parent for their poverty. Now, however, under the majority's interpretation, it does exactly that.

IV.

{¶59} This litany of errors spanning both the magistrate's and juvenile court's decisions should give anyone pause. Upholding these decisions in the face of such errors does not instill confidence given the gravity of the matter at hand.

{¶60} And that brings me back to where I started. The right to raise one's own children is an essential civil right and termination of that right has been likened to " 'the family law equivalent of the death penalty[.]' " *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54 (6th Dist.1991). I could fill this dissent with scores of similar quotes from every corner of this state, but I trust the point is made. If we believe that, and if parents must actually receive "every allowable procedural and substantive right" in a termination proceeding, *In re Donnell F.,* 6th Dist. Lucas No. L-04-1308, 2005-Ohio-4175, ¶ 22, then due process demands that the court actually (and correctly) evaluate each relevant factor as the statute commands. It is not too much to require some explanation by the juvenile court so that a losing parent understands why he or

she lost, thereby providing him or her a fair shot on appeal. The parents appearing before us deserve no less.

**{¶61}** I respectfully dissent.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

