[Cite as *In re R*, 2021-Ohio-1044.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  R.                              :          APPEAL NO. C-200319
                                                   TRIAL NO. F/06/1982 X
                                        :

                                        :          *O P I N I O N.*

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  March 31, 2021

*James A. Anzelmo,* for Appellant Mother, K.R.,

*James McCormick*, Attorney for the Guardian Ad Litem for R.,

*James W. Costin*, Attorney for R.,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Gretta M. Herberth*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services.

**Bock, Judge.**

{¶1}    Appellant mother, K.R., appeals the trial court's judgment terminating her parental rights to her child, R. Our thorough review of the record convinces us that clear and convincing evidence supports the juvenile court's decision. Accordingly, we affirm.

## I.    Relevant Facts and Procedure

### A.  Custodial History

{¶2}    Before October 2015, R. had mostly lived with her maternal grandmother. After R.'s grandmother passed away, R.'s mother, K.R., consented to the Hamilton County Department of Job and Family Services ("HCJFS") taking legal custody of R. The trial court awarded R.'s maternal aunt legal custody of R. in February 2016.

{¶3}    In 2018, maternal aunt informed HCJFS that she was no longer willing to care for R. HCJFS found R. and her siblings at maternal aunt's prior residence, living with K.R. There was no running water and the apartment was vacant except for the children's belongings.

{¶4}    The trial court placed R. in HCJFS's temporary custody on June 11, 2018. Before being placed in her current foster home, R. lived in two residential treatment facilities and several foster homes, but she ran away from all of them.

{¶5}    From February 2019 through the final hearing, R. lived with a licensed foster parent, T.P. Although R. complained about T.P., she had not run away from this placement.

{¶6} R. had significant mental health and behavioral issues and suffered from trauma as a result of being the victim of rape. HCJFS believed T.P. was effectively managing R.'s behavior and mental health needs.

## B. Case Plan

{¶7} In August 2018, HCJFS filed a case plan with the juvenile court, with the goal of reuniting R. with K.R. The case plan required K.R. to (1) obtain and secure appropriate housing, (2) participate in mental health services to address her diagnoses of bipolar disorder and depression, (3) obtain stable employment, and (4) complete a diagnostic assessment to identify and engage in further services.

{¶8} In a September 2018 semiannual report ("SAR"), HCJFS noted that while K.R. reported that she was engaged in services, she had not provided any proof. HCJFS expressed concern that K.R. was not engaged in services. The SAR stated that K.R. had failed to attend a scheduled diagnostic assessment appointment and had not signed a release of information for HCJFS. It was unclear whether K.R. had stable housing and income. HCJFS stated it would continue working toward reunification.

{¶9} An October 2018 guardian ad litem ("GAL") review noted that K.R. had indicated that she had a therapist, but had provided no further information. K.R. still needed to secure stable housing, participate in a diagnostic assessment, and follow all recommendations.

{¶10} In a January 2019 SAR, HCJFS reported that K.R. had been visiting R. at Passages until two weeks earlier. She had stopped visiting due to issues with the staff, but maintained telephone contact with R. Further, K.R. was making progress toward reunification: She had achieved stable housing since early January, had

completed a diagnostic assessment, was taking medications, was applying for SSI, and was not using any substances.

{¶11} A February 2019 HCJFS case progress report showed that K.R. was engaged in Greater Cincinnati Behavioral Health ("GCBH") case management and med-somatic services. K.R. was taking medication for her bipolar disorder and was on the waiting list at GCBH for therapy. K.R. had secured a one-bedroom apartment, which the caseworker found to be appropriate. Reunification remained the goal. HCJFS requested that K.R. participate in family and individualized therapy.

{¶12} In April 2019, HCJFS moved to extend temporary custody to allow K.R. time to participate in individual therapy and to ensure that she maintained stable housing. The trial court granted the motion in May 2019. It extended temporary custody through December 11, 2019.

{¶13} In May 2019, R.'s GAL and a court appointed special advocate ("CASA") filed a joint report in which they encouraged maintaining a relationship between R. and K.R. They recommended that K.R. attend intake at Family Nurturing Center ("FNC") to begin supervised visitation. The report, however, noted that K.R.'s last diagnostic assessment was in October 2018, but she had not participated in counseling services as she was still on the waiting list for a therapist. K.R. was taking medication. Further, K.R. had been accepted into Cincinnati Metropolitan Housing Authority and HCJFS was providing a deposit on an apartment.

{¶14} A July 2019 SAR showed that K.R. was receiving case management through GCBH, living with her sister, and working with HCJFS to obtain stable housing. K.R. was not working. Moreover, K.R. had five active warrants, had not been consistent with maintaining contact with HCJFS, and was not engaged in

4

individual therapy or med-somatic care. Finally, the SAR reported that K.R. refused to complete FNC intake for visitation because she did not believe that her visits should be supervised.

{¶15} An August 2019 GAL report showed that K.R.'s visitation had been reduced due to her leaving visits early and failing to attend the previous two visits. Further, K.R. was not meeting the expectations of the case plan with regard to her mental health treatment. The GAL's November 2019 report stated the same.

{¶16} A January 2020 SAR reported that K.R. was not engaging in any services as requested by HCJFS, was not consistently meeting with the caseworker, and still had not completed a second diagnostic assessment. K.R. was living in a women's shelter, but was applying for an apartment.

## C.  R.'s Progress

{¶17} As of January 2020, R. was experiencing attendance issues at school but was maintaining good grades. R. continued to express her desire to return to her mother and stated that her foster mother was not nurturing or supportive. However, T.P. was doing well in managing R.'s behavior, providing structure, and meeting her mental health needs.

## D.  HCJFS Sought Permanent Custody of R.

{¶18} On October 17, 2019 HCJFS moved to modify temporary custody to permanent custody based on:

- R. had not been in K.R.'s custody for years, K.R. was sporadic in her visits, and K.R. was not participating in case plan services to reunify with R.;

- K.R. had not participated in individual counseling;

- K.R. did not have stable housing or income;

- K.R. had been homeless as recently as August 2019;

- K.R. continued to incur criminal charges; and

- The alleged father of R. had no involvement with R. and had abandoned her.

### E.  **Hearing on the Motion for Permanent Custody**

{¶19}  At a February 2020 hearing, K.R. testified that she was living at her sister's home and that she could move into a one-bedroom apartment whenever she wanted. Her plan was to give R. the bedroom and she would sleep on the couch. K.R. provided a receipt showing that she had picked out furniture for the apartment.

{¶20}  K.R. stated that she received $514 monthly in social security disability income, which was her only source of income. When asked how she planned to cover the rent, which was more than the $514 that K.R. was receiving per month, K.R. stated that her benefits would increase to $771 per month after she submitted a lease agreement.

{¶21}  K.R. faulted her caseworker for her failure to complete visits. However, K.R. admitted that when she had visitation she had missed several visits, showed up late or left early, and had not seen R. since November 2019. K.R. faulted the caseworker for not maintaining contact with her, but admitted that the last time she had attempted to make contact with her caseworker was in December 2019.

{¶22}  K.R. justified not obtaining an updated diagnostic assessment by pointing out that she had already participated in a court-ordered assessment in 2018. She testified that the second assessment had not been court ordered and that it did

not make sense to order another one. She also testified that she was receiving medications but that she was not engaged in individual counseling.

{¶23} HCJFS's exhibits included K.R.'s criminal record and reports from FNC. The FNC reports showed that, out of nine visits scheduled between October 2, 2019 and November 27, 2019, K.R. only came to three. (Two visits had been canceled by FNC or HCJFS to be rescheduled.) Of those three visits, K.R. either came late or left early. In November 2019, FNC advised K.R. that if she did not attend the next four visits, FNC would remove her from the schedule. After K.R. canceled a visit, FNC removed her from the schedule.

{¶24} K.R. produced an undated receipt for furniture that she had purchased, a letter stating that she had been approved for an apartment, an incomplete and unexecuted lease for an apartment, and confirmation of receipt of SSI benefits.

### F. The Magistrate's Decision

{¶25} The magistrate found that clear and convincing evidence showed that it was in R.'s best interest to commit her to HCJFS's permanent custody. The magistrate found that R. had been placed with her current foster parent for more than a year and that the placement was benefiting R. He found that K.R. could not maintain stable housing or income and had not visited R. since November of 2019. Further, visits had been terminated due to K.R.'s inconsistency. He found that R. had been abandoned by her alleged father.

{¶26} K.R. objected to the magistrate's decision. She faulted HCJFS for failing to provide assistance with completing a diagnostic assessment and obtaining

7

transportation to visits. K.R. also argued that the magistrate failed to consider that she had obtained permanent housing and stable income.

## G. **The Trial Court Granted HCJFS's Motion**

{¶27} The juvenile court entered judgment, adopting the magistrate's decision by separate entry. The court considered the statutory factors.

R.C. 2151.414(D)(1)(a) Interactions and Interrelationships

{¶28} K.R.'s involvement with R. had been sporadic throughout R.'s life. R. had been outside of K.R.'s custody since at least 2015. K.R. had not shown that she had ever been able to be an appropriate primary caregiver to R. While R. and K.R. had a bond and R. expressed a desire to live with K.R., K.R.'s visitation had been terminated at the time of the juvenile court hearing due to her inconsistent visits.

{¶29} The court noted R.'s dissatisfaction with her foster mother, but found that she was meeting R.'s mental health, behavioral, and educational needs in a way that K.R. would not be able to within a reasonable time. Further, because R. had disrupted from most of her other placements but had not disrupted from T.P's home, the court concluded R. was receiving appropriate structure at the foster home.

{¶30} R. had been abandoned by her father.

R.C. 2151.414(D)(1)(b) The Wishes of the Child

{¶31} R. desired to live with K.R. and expressed that her foster mother did not provide emotional support. The GAL, however, recommended that permanent custody be awarded to HCJFS.

R.C. 2151.414(D)(1)(c) Custodial History

{¶32} R. mostly lived with her maternal grandmother before her death in 2015. Custody was placed with maternal aunt from 2015 until 2018, when R. was

placed in HCJFS's temporary custody. HCJFS placed R. with T.P. in February 2019 through the date of the hearing on the motion for permanent custody.

R.C. 2151.414(D)(1)(d) Child's Need for Legally Secure Permanent Placement

{¶33}  The juvenile court determined that R. clearly needed a legally secure permanent placement, which could not be achieved without granting permanent custody. K.R. had not obtained stable housing, her visits with R. were sporadic, her efforts to engage with HCJFS were unsatisfactory, and R.'s needs were being met by T.P. The trial court found that K.R. was not able to offer the stability and permanency that R. required and therefore, a legally secure placement could not be achieved without granting permanent custody to HCJFS.

R.C. 2151.414(D)(1)(e) Whether Factors in (E)(7)-(10) Apply

{¶34}  The court found that R.C. 2151.141(E)(10) applied as R.'s father had abandoned her. None of the other factors applied to either parent.

{¶35}  Taking all of the relevant factors into consideration, the trial court found that awarding permanent custody to HCJFS was in R.'s best interest.

## II.    Law

### A.    Standard of Review

{¶36}  Parents have a paramount right to the custody of their children. As a result, the juvenile court's determination to grant permanent custody to HCJFS must be supported by "clear and convincing" evidence. *In re W.W.*, 1st Dist. Hamilton Nos. C-110363 and C-110402, 2011-Ohio-4912, ¶ 46. Clear and convincing evidence is sufficient evidence to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "We will not substitute our judgment for that of the trial

court applying a clear-and-convincing standard where there is ample competent and credible evidence supporting the trial court's determination." *In re A.M.*, 1st Dist. Hamilton No. C-190027, 2019-Ohio-2028, ¶ 16.

{**¶37**} A review of the sufficiency of the evidence is different than a review of the weight of the evidence. *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 15. To determine whether there was sufficient evidence to support the termination of parental rights, the court determines whether some evidence exists on each element. It is a test of adequacy and a question of law. *Id.* at ¶ 15. When conducting a weight-of-the-evidence review in permanent-custody cases, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. *Id.* at ¶ 16.

## B.     **Permanent Custody**

{**¶38**} Before terminating parental rights and granting permanent custody to a public child-services agency, a juvenile court must apply the two-pronged test established by R.C. 2151.414(B)(1). The statute requires the court to find, by clear and convincing evidence, that: (1) one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) permanent custody is in the best interest of the child under R.C. 2151.414(D)(1)(a)-(e). R.C. 2151.414(B)(1).

{**¶39**} The first prong of the permanent-custody test is satisfied when a child is in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

**{¶40}** The second prong of the test requires the juvenile court to determine whether permanent custody is in the child's best interest. *In re Allah*, 1st Dist. Hamilton No. C-040239, 2005-Ohio-1182, ¶ 10.

### III. Analysis

**{¶41}** The record reflects that competent, credible evidence supported the trial court's judgment. First, the trial court correctly determined that R. had been in HCJFS's custody for more than 12 of 22 months. R.C. 2151.414(B)(1)(d). Next, the record showed that the trial court properly considered the best-interest factors under R.C. 2151.414(D). The evidence supports the trial court's determinations that:

- K.R.'s involvement with R. had been sporadic;

- R.'s father had abandoned her;

- K.R. had never been in a position to serve as an appropriate primary caregiver to R.;

- R.'s mental health, behavioral needs, and educational needs were being met by her foster mother and K.R. would not be able to provide for those needs within a reasonable time;

- Foster mother was providing the discipline and structure that R. needs;

- While R. wanted to live with K.R. and expressed that the foster mother did not provide nurturing support, the GAL recommended that permanent custody be awarded to HCJFS; and

- A legally secure permanent placement could not be achieved without granting permanent custody to HCJFS.

11

{¶42} K.R. argued that the magistrate failed to consider the evidence she submitted involving her new apartment, the furniture she had purchased, and the SSI income verification. But the only evidence that K.R. had secure housing was an incomplete, unsigned lease, a letter from the landlord, and her testimony that she could move in "whenever she wanted." She had not yet paid the first month's rent to allow her to occupy the apartment. Before applying for the apartment, K.R. had significant history of homelessness, justifying the trial court's finding that she could not maintain stable housing.

{¶43} K.R. had a significant amount of time to complete the requirements of her case plan. But she clearly failed to meet the goals within the case plan. As a result, she failed to show the court that R. could be placed with her, or should be placed with her.

{¶44} Competent, credible evidence that met the clear and convincing standard supported the trial court's granting permanent custody to HCJFS.

## IV.  Conclusion

The decision to terminate a parent's parental rights requires serious consideration and should not be taken lightly. We have thoroughly reviewed the record and hold that it supports the juvenile court's judgment terminating K.R.'s parental rights and granting permanent custody to HCJFS. Therefore, we overrule K.R.'s sole assignment of error and affirm the juvenile court's judgment.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

       The court has recorded its entry on the date of the release of this opinion.